## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MITCHELL J. STEIN

 **Plaintiff,**

  **v.**

**U.S. SECURITIES AND EXCHANGE COMMISSION,**

 **Defendant.**

**Civil Action No. 15-1560  (JDB)**

## MEMORANDUM OPINION

Before the Court are [10] and [11] cross-motions for summary judgment in this Freedom of Information Act (FOIA) case.  Plaintiff Mitchell Stein is the subject of both a criminal and a civil judgment entered against him related to various fraud and securities violations.  He seeks records developed in the civil enforcement action brought against him by defendant Securities and Exchange Commission (SEC).  For the reasons that follow, Stein's motion will be denied, and the SEC's motion will be granted in part and denied in part.

## I.  BACKGROUND

In 2011, the SEC filed a civil enforcement action against Heart Tronics, Inc., a medical device manufacturing company, naming Stein and several other individuals and corporate officers associated with the company as co-defendants.  See Donnelly Decl. [ECF No. 10-2] ¶ 14; see also Complaint, SEC v. Heart Tronics, Inc., et al., No. 8:11-1962 JVS (ANx) (C.D. Cal.) [ECF No. 1].  Stein was the purported outside counsel to the company, and his wife, Tracey Hampton-Stein, was the majority shareholder.  The SEC alleged that Stein and his co-defendants engaged in a series of fraudulent schemes, masterminded by Stein, to drive up the price of Heart Tronics stock, including

repeatedly creating false sales orders and including these in Heart Tronics' SEC filings, and issuing false press releases and other public broadcasts.   Donnelly Decl. ¶ 14.   Meanwhile, Stein continuously directed the sale of his and Hampton-Stein's Heart Tronics stock, netting more than $5.8 million in profit.   Id.   Stein was convicted in 2013 on charges of securities fraud, mail fraud, wire fraud, conspiracy to commit mail and wire fraud, and conspiracy to obstruct justice.   Id. ¶ 16. In 2015, the district court in the Heart Tronics case entered judgment against Stein based on the collateral estoppel effect of his related criminal conviction.   See id. ¶ 15; see also Judgment, SEC v. Heart Tronics, Inc. et al., No. 8:11-1962 JVS (ANx) (C.D. Cal.) [ECF No. 277].   His criminal conviction was affirmed in January 2017 by the Eleventh Circuit, although his sentence was vacated and that case remanded to the Southern District of Florida for resentencing.   See United States v. Stein, 846 F.3d 1135, 1156 (11th Cir. 2017).   His appeal of the judgment entered against him in the Heart Tronics case, which was stayed during the appeal of the criminal case, is still ongoing in the Ninth Circuit.   See Gov't Supp. Br. [ECF No. 19] at 2–3; see also Mar. 3, 2017 Clerk Order, SEC v. Heart Tronics, Inc., et al., No. 15-155506 (9th Cir.) [ECF No. 35] (lifting stay).

Stein submitted a FOIA request to the SEC in March 2015, seeking two categories of documents: all documents and information described in the privilege log prepared by the SEC in the Heart Tronics case, and all documents and information relating to the SEC's investigation into individuals named Yossi Keret, Tony Nony/Nonoy, Avi Cohen, Ari Cohen, and Marina Orita.   See Compl., [ECF No. 1] Ex. B.   Stein was accused of inventing several of the names in the latter category for use in false purchase orders.   The SEC responded in June 2015, withholding the privilege log records under FOIA Exemption 7(A), which permits the withholding of records that may interfere with law enforcement activities.   See Compl., Ex. D at 1; see also 5 U.S.C.

§ 552(b)(7)(A).  The SEC also asserted that other exemptions may apply, and reserved the right to raise those exemptions when Exemption 7(A) was no longer applicable.  Compl., Ex D. at 1.  With respect to the second category of documents, the SEC did not discuss these in its response, except to conclude in a footnote that "to the extent the records [Stein was] seeking . . . exist" they had either already been made available to Stein in the <u>Heart Tronics</u> litigation, or were included in the privilege log category of documents.  <u>Id.</u> at n.1.

Stein filed an administrative appeal of the SEC's decision, insisting that the agency turn over "all of the requested documents," and arguing that Exemption 7(A) did not apply because the civil and criminal actions against him had concluded.  Compl., Ex. E at 1–2.  The SEC's Office of General Counsel (OGC) responded, concluding that the FOIA officer had correctly withheld the requested records under Exemption 7(A), because claims brought against Stein's co-defendants in the <u>Heart Tronics</u> case were still proceeding, and because Stein had appealed the civil judgment against him to the Ninth Circuit.  <u>See</u> Gov't Mot. for Summ. J., Ex. 2 [ECF No. 10-3] at 1–2.  Therefore, the OGC concluded that release of the records could still interfere with ongoing enforcement proceedings.  <u>Id.</u> at 2.

Stein filed this suit in September 2015, bringing claims under both FOIA and the Privacy Act, 5 U.S.C. § 552a, seeking the production of all records responsive to his request.  Both parties have moved for summary judgment.

## II.  <u>LEGAL STANDARDS</u>

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Evidence is construed in the light most favorable to the non-moving party; however, factual assertions made in the moving party's declarations may be accepted as true unless the

opposing party submits affidavits, declarations, or documentary evidence to the contrary.  See, e.g., Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006); Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Georgacarakos v. FBI, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (internal quotation marks omitted) (quoting Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). FOIA provides a "'statutory right of public access to documents and records' held by federal agencies."  Citizens for Responsibility & Ethics in Wash. (CREW) v. U.S. Dep't of Justice, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting Pratt v. Webster, 673 F.2d 408, 413 (D.C. Cir. 1982)). As the Supreme Court has explained, FOIA is "a means for citizens to know what their Government is up to."  Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 171–72 (2004) (internal quotation marks omitted).  Thus, FOIA requires federal agencies to make their records available to the public upon request, unless the requested information falls under one of nine statutory exemptions to disclosure.  See 5 U.S.C. §§ 552(a)–(b).

District courts review de novo an agency's decision to withhold requested documents under a statutory exemption, and the agency "bears the burden of proving the applicability of claimed exemptions."  Am. Civ. Liberties Union (ACLU) v. U.S. Dep't of Defense, 628 F.3d 612, 619 (D.C. Cir. 2011); 5 U.S.C. § 552(a)(4)(B).  To satisfy its burden, the agency may submit supporting declarations of responsible agency officials and, where necessary, an index of the documents withheld, known as a Vaughn index.  See ACLU, 628 F.3d at 619; Vaughn v. Rosen, 484 F.2d 820, 827–28 (D.C. Cir. 1973).  "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the withheld information logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by

evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." ACLU, 628 F.3d at 619. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" Id. (some internal quotation marks omitted) (quoting Larson v. U.S. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009).

## III.  DISCUSSION

Stein raises three main issues in his motion for summary judgment and in his opposition to the government's motion for summary judgment: he challenges the adequacy of the government's search for responsive records, the agency's withholding determinations, and the agency's segregability determinations. See Stein Mot. for Summ. J. [ECF No. 11] at 10–13, 16–18; Stein Opp'n to Gov't Mot. for Summ. J. (hereinafter "Stein Opp'n") [ECF No. 14] at 5–10. The government argues that Stein failed to exhaust his administrative remedies with respect to the second category of requested documents and with respect to his Privacy Act claims. Furthermore, in addition to claiming that the requested documents are exempt from disclosure under FOIA Exemption 7(A), the government also raises arguments under Exemptions 3, 5, 6, and 7(C). See Gov't Mot for Summ. J. [ECF No. 10-1] at 1–2; 5 U.S.C. §§ 552(b)(3), (5), (6), (7)(C). The Court will address each argument in turn.

### A.  EXHAUSTION

Before a plaintiff may bring an action under FOIA, he must first exhaust his administrative remedies. See Hidalgo v. FBI, 344 F.3d 1256, 1258–59 (D.C. Cir. 2003) (noting that exhaustion under FOIA is a prudential requirement). Failure to administratively appeal an adverse determination may bar judicial review of a FOIA claim. See Wilson v. U.S. Dep't of Transp., 730 F. Supp. 2d 140, 150 (D.D.C. 2010) (citing Hidalgo, 344 F.3d at 1259–60). Likewise, Privacy Act claims are subject to an administrative exhaustion requirement—and exhaustion under the Privacy

Act is a jurisdictional requirement.  See Barouch v. U.S. Dep't of Justice, 962 F. Supp. 2d 30, 67 (D.D.C. 2013) (citing cases); see also 5 U.S.C. §§ 552a(d)(1)–(3), (g)(1).  "A person seeking judicial review of an agency's handling of his or her Privacy Act request must actually exhaust the available administrative remedies."  Barouch, 962 F. Supp. 2d at 67 (internal quotation marks omitted) (quoting Makuch v. FBI, No. Civ. A 99-1094 RMU, 2000 WL 915640, at *4 (D.D.C. Jan. 5, 2000)).

Stein has clearly failed to exhaust any Privacy Act claims—there is no mention of the Privacy Act in his initial request for documents or in his administrative appeal letter.  See, e.g., Compl., Ex. B at 1 ("This is a request under the Freedom of Information Act (5 U.S.C. Section 552).").  Indeed, the first and only time any mention of the Privacy Act is made is in his complaint—he makes no argument with respect to the Privacy Act in his motion for summary judgment or in any of the other briefs filed here.  See, e.g., Compl. at 5, 8–9.[1]  Accordingly, Stein's Privacy Act claims are dismissed for failure to exhaust.  See, e.g., Barouch, 962 F. Supp. 2d at 67–68 (dismissing Privacy Act claims for failure to exhaust administrative remedies); Mulhern v. Gates, 525 F. Supp. 2d 174, 187 (D.D.C. 2007) (same).

The SEC also argues that Stein has failed to exhaust his FOIA claim with respect to the second category of requested documents, those relating to various named individuals.  See Compl., Ex. B at 1 (Stein's FOIA request).  The SEC argues that, because Stein's appeal letter did not contest the SEC's determination that the records in the second category had either already been produced to him or were included in the privilege log, Stein failed to administratively appeal the SEC's determination with respect to this group of documents.  Gov't Mot. for Summ. J. at 6.

It is true that Stein did not specifically contest this point in his appeal letter.  He disputed

---

[1] There appears to be an error in the complaint where the paragraph numbering starts over on page 8.  To avoid confusion, the Court will therefore cite to page numbers in the complaint, rather than numbered paragraphs.

the SEC's withholding decision under Exemption 7(A)—which, according to the SEC, was also the exemption under which the SEC was withholding some documents related to the second document category.  <u>See</u> Compl., Ex. D at 1 n.1.  But his appeal letter also specifically demanded—twice—"all of the requested documents," not just documents related to the first category.  <u>See</u> Compl., Ex. E at 1–2.  The government is obligated to construe FOIA requests—and appeals—liberally, where a request is "reasonably susceptible to the broader reading."  <u>See</u> <u>LaCedra v. Executive Office for U.S. Attorneys</u>, 317 F.3d 345, 347–48 (D.C. Cir. 2003) (holding that a FOIA request should be read to seek all documents covered by a catchall).  While Stein's appeal letter could have been more specific, it is reasonably apparent based on his references to <u>all</u> of the documents he requested that he intended to appeal the SEC's decision with respect to his entire request, not merely some portion of it.  Moreover, it is unclear to the Court how, exactly, Stein was supposed to credibly contest the SEC's conclusion that the documents responsive to the second category had either already been turned over to him or were included in the privilege log, as the agency did not explain in its response letter how it reached this conclusion, and Stein did not have access to the documents listed on the privilege log or to any other documents in the SEC's possession to confirm what had been given to him.  The Court therefore finds that Stein sufficiently exhausted his administrative remedies with respect to the second category of requested documents.

### B.   ADEQUACY OF THE SEARCH

Stein also argues that the government's search for responsive records was inadequate.  Where a FOIA plaintiff challenges the adequacy of an agency's search for responsive documents, the agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents."  <u>Morley v. CIA</u>, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (some internal quotation marks omitted) (quoting <u>Weisberg v. U.S. Dep't of Justice</u>, 705

F.2d 1344, 1351 (D.C. Cir. 1983)); Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).  The relevant question, moreover, "is not whether other responsive documents may exist, but whether the search itself was adequate."  Wilson, 730 F. Supp. 2d at 149 (citing Steinberg, 23 F.3d at 551).  "[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  Summary judgment may be granted if the agency's declarations provide "sufficiently detailed information for a court to determine if the search was adequate."  Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 838 (D.C. Cir. 2001) (internal quotation marks omitted).  Stein raises a number of objections to the agency's search methods, most of which relate to the agency's search—or lack thereof—for his second category of requested documents.

    1.   Search for documents responsive to Stein's first category of requests

With respect to the privilege[2] log documents, i.e., documents responsive to Stein's first category of requests, the agency listed on the Vaughn index all of the documents identified individually on the privilege log, identified the handwritten notes and legal research that was listed categorically on the privilege log, and searched for privileged emails that were also identified categorically on the privilege log.  Donnelly Decl. ¶¶ 5, 7–8, 12–13.  Stein does not challenge the agency's search for either the individual documents identified on the privilege log or the handwritten notes and legal research identified on the privilege log, but he does contest the agency's search for relevant privileged emails.

Stein objects to the search terms the agency used for identifying privileged emails that were

---

[2] To be clear, the Court makes no determination at this point as to whether these documents are, in fact, covered by a legal privilege; the Court only refers to "privileged" notes, documents or emails as those the government identified on its privilege log in the Heart Tronics case.

listed categorically on the <u>Heart Tronics</u> privilege log.  Stein Opp'n at 5–8; <u>see also</u> Privilege Log, Ex. B. to Stein Decl. [ECF No. 11-1] at 1.  The privilege log lists two categories of documents containing privileged emails dated between May 2009 and December 19, 2011: internal SEC attorney and staff accountant emails discussing the <u>Heart Tronics</u> litigation (entry 1), and emails between the SEC and various other government agencies that assisted with the investigation, including attorneys at DOJ, the FBI, and the IRS (entry 4).  <u>See</u> Privilege Log at 1; <u>see also</u> Donnelly Decl. ¶¶ 7–8.  In gathering these emails for purposes of FOIA review, the SEC's Office of Information Technology (OIT) searched for (1) emails dated between May 3, 2009 and December 19, 2011, the period of the formal investigation; (2) sent to or from named SEC staff who were assigned to the investigation; (3) and which contained any of the following terms: Stein, Heart Tronics, Inc., Martin Carter, Willie Gault, J. Rowland Perkins, Mark Nevdahl, Ryan Rauch, Yossi Keret, Tony Nony/Nonoy, Avi Cohen, Ari Cohen, or Marina Orita, the last five names of which were identified in Stein's second category of requests.  Donnelly Decl. ¶ 8.

Stein argues that these search terms were designed to "confuse the Court and manipulate the facts" by adding names that Stein did not ask for in his FOIA request, i.e., those of his co-defendants and the SEC staff involved in the investigation.  Stein Opp'n at 7.  According to Stein, this is evidence of the SEC's bad faith, because it is evidence that the SEC was trying to obscure or skew the results of any search.  <u>Id.</u> at 5–7.  But Stein's objections on this point make little sense.  The SEC's search terms with respect to the privileged emails were reasonably calculated to identify privileged emails noted on the <u>Heart Tronics</u> privilege log by identifying relevant dates (the period of the investigation), custodians (SEC attorneys and staff assigned to the investigation), and subjects of or persons of interest in the investigation (Stein, his co-defendants and other relevant names, including Yossi Keret, Tony Nony, etc.).  These search terms produced 2,715 documents,

which the SEC then reviewed, concluding that 1,800 were privileged emails categorically identified on the privilege log.  Donnelly Decl. ¶¶ 8–10.  There is no evidence of bad faith.  The Court is therefore satisfied that the agency has fulfilled its search obligations with respect to the first category of requested documents.

     2.  <u>Search for documents responsive to the second category of requests</u>

     With respect to the second category of documents, as the Court has already noted, the agency concluded in its FOIA response letter that documents responsive to this category had either already been made available to Stein in the <u>Heart Tronics</u> litigation or were included on the privilege log.  Compl., Ex. D. at 1 n.1.  It is clear that the SEC did not provide Stein the documents it already produced to him in the <u>Heart Tronics</u> case in response to his FOIA request, nor does the agency state that it ever conducted a search through its records for documents specifically responsive to Stein's second category of requests—instead, it concluded that the only documents that had not been made available to Stein in the previous litigation were those identified on the privilege log.

     Stein never directly addresses the agency's argument that it produced much of his requested information during the <u>Heart Tronics</u> litigation.  He does, however, object generally to the agency's failure to search for documents responsive to this second category of requests.  Stein also argues repeatedly that the SEC has a 200-million-file database compiled during the investigation, containing vast numbers of unprivileged documents, that the government never produced to him in either the <u>Heart Tronics</u> litigation or in <u>United States v. Stein</u>.  Stein Opp'n at 3, 9, 10, 12, 16.  Stein argues that the SEC's failure to search this database for documents relating to his second category of requests is additional evidence of the agency's bad faith.  <u>Id.</u> at 3–10.

     a.  <u>Heart Tronics</u> discovery and the SEC's open file policy

Although the SEC maintains that Stein waived any objection to the agency's findings with respect to category two of the request, the SEC nevertheless provided the Court with information about the basis for its conclusion that documents responsive to category two were already provided to Stein in the <u>Heart Tronics</u> litigation or were included on the privilege log.  <u>See</u> Gov't's Reply [ECF No. 16] at 4–6.  The SEC relies on a declaration submitted by an attorney in the <u>Heart Tronics</u> litigation in response to Stein's motion to compel in that case, which explains the SEC's "open file" discovery policy during that investigation.  <u>Id.</u> at 4; <u>see also</u> SEC Am. & Supp. Resp. to Request for Produc. of Docs., Ex. A to Gov't's Reply [ECF No. 16-1] ¶ 3; Nonaka Decl., Ex. B to Gov't's Reply [ECF No. 16-2].[3]

According to the Nonaka declaration, the SEC produced two million pages of documents to Stein and his co-defendants during the litigation, which constituted "all subpoenas and voluntary document requests issued during the investigation, all documents produced in response to such subpoenas and requests, all investigation testimony given by any witness, and all exhibits to all testimony."  Nonaka Decl. ¶¶ 5–6.  The SEC also made available for review two one-terabyte hard drives that were delivered to the SEC on behalf of Heart Tronics, and which contained data from Heart Tronics computers, as well as boxes of documents likewise delivered by Heart Tronics (the "RenewData materials").  <u>Id.</u> ¶¶ 7–8.  The SEC received these materials from RenewData, a third party e-discovery vendor that Heart Tronics' one-time counsel, Greenberg Traurig, LLP, had contracted with on Heart Tronics' behalf to help manage the discovery process during the SEC's investigation.  The SEC received the two hard drives and the boxes of documents at the direction of Heart Tronics' then-counsel Jared Scharf, because Heart Tronics could no longer pay RenewData to store the drives and documents.  <u>See</u> SEC Am. & Supp. Resp. ¶ 4; Nonaka Decl. ¶¶

---

[3] Stein also includes this declaration in the lengthy set of materials he submitted with his opposition to the government's motion for summary judgment.  <u>See</u> Ex. B., Stein Decl. [ECF No. 14-1].

7–8.

The SEC never reviewed the contents of these documents or hard drives, but did make them available to Stein and his co-defendants for review at SEC headquarters during the litigation. SEC Am. & Supp. Resp. ¶ 4; Nonaka Decl. ¶¶ 7–8.  All told, these materials "comprise[d] the universe of non-privileged documents in the SEC's possession, custody or control that were produced by witnesses and other third parties during the investigation."  Nonaka Decl. ¶ 9.  The SEC withheld only those documents described individually or categorically on the privilege log, id. ¶¶ 11–19; hence, the SEC concluded that the only universe of documents at issue here are those listed on the privilege log.  See Gov't's Reply at 4–5; Donnelly Decl. ¶ 6 ("All of the documents Stein requested in the second bullet-point category . . . were either made available to Stein in SEC v. Heart Tronics or were listed on the Privilege Log.").

The SEC seems to think that its open file discovery policy during the Heart Tronics litigation has satisfied its FOIA obligations and that it need not search for documents responsive to Stein's second category of requests, because there is nothing it could search for or produce that Stein has not already seen, excepting the documents on the privilege log.  Were the Court certain that Stein already received all documents responsive to his FOIA request in the prior litigation, the Court might agree.  If an agency can demonstrate that it has already searched for and actually produced all documents responsive to a plaintiff's FOIA request, FOIA surely does not require it to duplicate those efforts.[4]  But it is not clear here that this situation is so neat, and there is one issue that is cause for concern.

The Court's concern relates to the RenewData materials—the two one-terabyte hard

---

[4] For example, it cannot be the case that if a FOIA plaintiff submits a request for "Document A," which the agency produces, that the agency need produce Document A again if the plaintiff submits another request for "Document A" and "Document B" a year later if the agency can demonstrate that it produced Document A the first time.

drives and the boxes of documents.  While the SEC maintained an open file policy during the <u>Heart Tronics</u> litigation, it did not <u>produce</u> all of its records to Stein, such that he now already has all of the SEC's records in his possession.  The RenewData materials were only "made available" to him for review in Washington, D.C. during the discovery period.  Nonaka Decl. ¶ 7.  As discovery in <u>Heart Tronics</u> has now ended, and that case is on appeal, Stein presumably no longer has access to these materials, and the Court is not convinced that the fact that Stein once had a chance to examine these materials is sufficient to satisfy FOIA.  Although FOIA obligations may be satisfied when the agency "has provided an alternative form of access" to requested records, this is typically only the case when the records are publicly accessible, for example, on the internet, in other published records, or in a public reading room.  <u>See, e.g.</u>, <u>Shutleff v. EPA</u>, 991 F. Supp. 2d 1, 19 (D.D.C. 2013) (citing <u>Oglesby</u>, 920 F.2d at 70).  In other words, FOIA plaintiffs in such cases have the ability to look up or search through the documents they want if the agency does not provide the records in response to a specific request.  Stein, presumably, still has access to the two million pages of documents the SEC provided to him, making the SEC's production with respect to those documents a kind of "alternative access," but this does not appear to be the case with respect to the RenewData documents.

Moreover, the SEC states that it never reviewed these materials when they were delivered, which leaves open the possibility that there are documents responsive to Stein's second request contained in these materials, of which the SEC is unaware.  Although an agency is not required to search endlessly for every document responsive to a FOIA request, its search must be "reasonably calculated to uncover all relevant documents."  <u>Valencia-Lucena v. U.S. Coast Guard</u>, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal quotations marks omitted) (quoting <u>Truitt v. U.S. Dep't of State</u>, 897 F.2d 540, 542 (D.C. Cir. 1990)).  Here, the SEC has not conducted a search for Stein's

second category of requests at all, relying on its productions in the <u>Heart Tronics</u> case. But because Stein no longer has access to the RenewData materials, the onus is on the agency to search this set of materials for documents responsive to Stein's second category of requests, or else explain to the Court why those materials are unlikely to contain responsive documents.

   b. 200-million file database

   As noted above, Stein consistently argues that there is a 200-million file database in the SEC's possession that the agency failed to search for his category two requests, and which Stein is convinced contains undisclosed material that will exonerate him. Stein does not explain what this database is, how he knows of its existence, or why he thinks it contains undisclosed material, and the SEC has stated—both here and in the <u>Heart Tronics</u> litigation—that it does not know what database Stein is referring to and that there is no database containing undisclosed documents. <u>See</u> Gov't Response at 6; SEC Am. & Supp. Resp. ¶ 4. Based on documents both parties have submitted, however, it appears likely that Stein is referring to the set of documents or materials maintained by RenewData, which has on occasion been referred to as a "database," and which appears to be the only database referred to in either the <u>Heart Tronics</u> litigation or the criminal case against Stein. <u>See</u> SEC Am. & Supp. Response ¶ 4; Nonaka Decl. ¶ 10 (referring to a RenewData "database"); Trans. of <u>Faretta</u> Hrg. in <u>United States v. Stein</u>, Ex. D to Stein Decl. [ECF No. 17-1] at 33:14–18 (Stein stating "[t]here was a database created which the Government has, in 2008, of all the documents presumably in the world regarding Signal Life [sic]. It was provided to the SEC, it was made by Greenberg Traurig in conjunction with Mr. Scharf, in conjunction with the SEC."); <u>see also</u> <u>United States v. Stein</u>, 846 F.3d 1135, 1142 (11th Cir. 2017) (referring to a database of "about 200 million records produced by Signalife"); Ex. 4, Gov't Opp'n to Motion for New Trial, <u>United States v. Stein</u>, No. 11-cr-80205-KAM (S.D. Fla.) [ECF No. 292-4] (letter to SEC from

former Heart Tronics counsel Katten Munchin & Rosenman describing the RenewData database).[5]

To the extent that the 200-million-file database that Stein refers to is the RenewData documents and materials <u>produced to the SEC</u>, the Court has already addressed the SEC's obligation to search these materials or explain why those materials are unlikely to contain responsive documents.  The SEC has also stated that it never had access to the actual database (if there was one) hosted by RenewData, Nonaka Decl. ¶ 10; thus, if Stein is referring to a greater "database" of documents hosted by RenewData but never provided to the SEC, the SEC has no obligation to produce documents outside its custody or control at the time of the FOIA request.  <u>See</u> <u>McGehee v. CIA</u>, 697 F.2d 1095, 1110 (D.C. Cir. 1983).  Finally, if Stein is referring to some <u>other</u>, heretofore unheard of, database of materials, Stein has presented no evidence that there is more material in the SEC's possession beyond what the Court has already discussed.  Mere speculation about the existence of other documents is not sufficient to overcome the presumption of good faith accorded the agency's affidavits.  <u>See, e.g.</u>, <u>Willis v. U.S. Dep't of Justice</u>, 581 F. Supp. 2d 57, 72–73 (D.D.C. 2008).

Accordingly, for the reasons explained above, the Court finds that the SEC has not satisfied its search obligations with respect to Stein's second category of requests.

3.  <u>Exhibit X</u>

Like the mysterious database, Stein also spends a great deal of time arguing about "Exhibit X," a document produced to Stein in the <u>Heart Tronics</u> litigation. <u>See, e.g.</u>, Stein Opp'n at 10–11; Stein Mot. at 15–16; <u>see also</u> Ex. X, Stein Decl. [ECF No. 11-1].  Exhibit X is apparently a publicly available SEC filing signed by someone named "Yossi Keret" on behalf of a company called Pluristem Life Systems, a company which is apparently unrelated to any of the parties to the <u>Heart</u>

---

[5] Signalife was the predecessor organization to Heart Tronics, and Scharf at one point represented Stein and his co-defendants, including Heart Tronics, during the litigation.

Tronics case.  See Ex. X; see also Stein Reply, Ex. B, SEC Resp. to First Interrogatories [ECF No. 17-1] at 32–33.[6]  Stein, however, was accused of falsifying a purchase order, using the name "Yossi Keret," for an allegedly fictitious company called IT Healthcare.  Stein Reply, Ex. B., SEC Resp. to First Interrogatories at 32–33; see also Compl., SEC v. Heart Tronics, 8:11-cv-1962-JVS-KES (C.D. Cal.) ¶¶ 51–62.  Stein argues that Exhibit X proves that Yossi Keret is a real person and that the SEC has therefore hidden away documents pertaining to Keret and other individuals that undermine the civil and criminal cases against him.  Stein Mot. at 15–16; Stein Opp'n at 10–11.

But Stein has not explained how the apparent existence of a person named Yossi Keret at a company named Pluristem Life Systems shows either that a person named Yossi Keret really did sign a purchase order on behalf of an unrelated company called IT Healthcare, or more relevantly, that the SEC is hiding documents related to a person named Yossi Keret at IT Healthcare.  In short, Stein has presented no evidence to suggest that these two people are the same or could reasonably be the same.  Exhibit X therefore says nothing about the agency's good faith or bad faith in this FOIA action, and does not undermine the agency's affidavits regarding what was already produced to Stein during the Heart Tronics litigation.  To the extent that there may be additional documents pertaining to Keret or others in the RenewData materials, the agency will be able to so indicate once it has conducted its search of these materials.

### 4.   De Facto *Glomar* Response

Stein next argues that, because the SEC's Vaughn index does not identify which documents are responsive only to his first requested category of documents and which are responsive to both

---

[6] Because this exhibit is a "composite exhibit" and therefore contains other documents in addition to the SEC's interrogatory response, the Court has cited to the page number of the PDF document, rather than to the page number of the SEC's response, for clarity.

the first and second categories, the agency has submitted a "de facto <u>Glomar</u> response" to his requests.  Stein Opp'n at 8–9.  Such a response is appropriate where the fact of the existence or nonexistence of agency records itself falls within a FOIA exemption; the agency may then submit a FOIA response that neither confirms nor denies the existence of such records.  <u>See, e.g.</u>, <u>Wolf v. CIA</u>, 473 F.3d 370, 374 (D.C. Cir. 2007); <u>see also</u> <u>Phillippi v. CIA</u>, 546 F.2d 1009, 1012 (D.C. Cir. 1976) (concerning the CIA's refusal to confirm or deny the existence of records related to a ship named the <u>Hughes Glomar Explorer</u>).  According to Stein, the fact that the agency cannot or will not identify which documents are responsive to which request again calls into question the agency's good faith and the adequacy of its search.  Stein Opp'n at 8–9.

Stein's arguments on this point are misguided.  The agency has not submitted a <u>Glomar</u> response, and it certainly has not indicated that it intends to rely on that doctrine for any of the withheld documents.  The agency is not obligated to identify in the <u>Vaughn</u> index which documents are specifically responsive to which categories of Stein's requests.  The purpose of the <u>Vaughn</u> index, together with any declarations an agency may submit in support of its withholding decisions, is to provide the court with enough information about the withheld documents for the court to determine whether the claimed exemptions were appropriately applied.  <u>See, e.g.</u>, <u>Defenders of Wildlife</u>, 623 F. Supp. 2d at 88–89; <u>Voinche v. FBI</u>, 412 F. Supp. 2d 60, 65 (D.D.C. 2006).  Whether the agency's index and declarations sufficiently support the agency's withholding decisions remains to be seen, but the <u>Vaughn</u> index is not indicative of bad faith on the agency's part with respect to its search.

### 5.  Conclusion

Accordingly, the Court finds that the agency's search for the privilege log documents was adequate, but that the agency failed to adequately search for documents responsive to Stein's

second category of requests.  The SEC shall conduct an adequate search of the RenewData materials for documents relating to its investigation into any individuals named Yossi Keret, Tony Nony/Nonoy, Avi Cohen, Ari Cohen, and Marina Orita during the Heart Tronics litigation.

### C.   WITHHOLDING DECISIONS

The SEC withheld the privilege log documents principally under FOIA Exemption 7(A), which exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A). However, the SEC also withheld in full or redacted in part a handful of records under Exemptions 6 and 7(C), which relate to individual privacy interests, and a few documents under Exemption 3, which relates to documents that are exempt by other statute.  Finally, the SEC also claims that many of the documents exempt under 7(A) are also exempt under Exemption 5, which protects documents covered by the attorney client privilege, deliberative process privilege, and the attorney work product doctrine.

### 1.   Exemption 7(A)

Exemption 7(A) applies to law enforcement records compiled for civil, administrative, and criminal matters.  Tax Analysts v. IRS, 294 F.3d 71, 77 (D.C. Cir. 2002).  Agency "records are considered 'compiled for law enforcement purposes' if 'the investigatory activity that gave rise to the documents is related to the enforcement of federal laws, and there is a rational nexus between the investigation at issue and the agency's law enforcement duties.'"  Judicial Watch v. Rossotti, 285 F. Supp. 2d 17, 24 (D.D.C. 2003) (some internal quotation marks omitted) (quoting Jefferson v. U.S. Dep't of Justice, 284 F.3d 172, 177 (D.C. Cir. 2002)).  Here, there is no dispute that the privilege log documents, compiled during the SEC's Heart Tronics investigation and litigation,

were compiled for law enforcement purposes.  Instead, Stein contests the agency's conclusion that release of the privilege log documents could reasonably be expected to interfere with ongoing enforcement proceedings. Stein Opp'n at 19–22; Stein Mot. for Summ. J. at 10–14.

In order to justify its withholding decision under Exemption 7(A), the SEC must demonstrate that "disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." Citizens for Responsibility & Ethics in Wash. (CREW) v. U.S. Dep't of Justice, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (internal quotation marks omitted) (quoting Mapother v. U.S. Dep't of Justice, 3 F.3d 1533, 1540 (D.C. Cir. 1993)).  Exemption 7(A) is thus a temporary exemption; once the relevant enforcement proceedings are over, the exemption no longer applies.  Id. at 1097.

"[A]lthough [courts] give deference to an agency's predictive judgment of the harm that will result from disclosure of information, it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings; it must rather demonstrate how disclosure will do so."  Id. at 1098 (internal quotation marks and citation omitted).  However, the SEC does not need to justify its withholding decision document by document; rather, it may take a categorical approach.  To do so, the agency must define functional categories, review the requested documents one by one and assign each to a category, and explain how the release of each category of documents would interfere with enforcement proceedings.  Bevis v. U.S. Dep't of State, 801 F.2d 1386, 1389–90 (D.C. Cir. 1986).  The defined categories must enable the court to "trace a rational link between the nature of the document and the alleged likely interference."  Id. at 1389.

The universe of documents at issue here are most of the documents listed individually on the Vaughn index,[7] the privileged emails, and the privileged notes and legal research.  The SEC

---

[7] The agency has specifically identified on the Vaughn index which exemptions it is asserting with respect to which documents.  Thus, it does not assert Exemption 7(A) with respect to Document Nos. 12, 13, 14, 16, 17, 34,

has reviewed and grouped all of these documents into two broad categories: "attorney work product and deliberations by Commission staff," and "memoranda by Commission Staff" to the Commission and to high ranking officers in the Division of Enforcement.  Donnelly Decl. ¶¶ 19–20, 22.

The first group of documents, consisting of attorney work product and staff deliberations, is the largest, and includes the privileged notes and emails, and the majority of the privilege log documents.  These documents reveal how the SEC interpreted various facts and law throughout the investigation, including impressions of witnesses and what SEC staff thought was and was not important as the investigation developed.  Id. ¶ 20.  The privileged emails include emails among the attorneys conducting and supervising the Heart Tronics investigation, including emails circulating drafts of memoranda and court filings, testimony outlines and exhibit lists, interview summaries and testimony digests, and emails discussing the drafting of documents, investigative plans, facts and legal issues, and settlement negotiations.  Id. ¶ 11. The privileged emails also include emails with other SEC staff seeking legal and factual information, analyzing relevant law and providing information about the investigation; emails containing Suspicious Activity reports; emails containing information from the Commission de Surveillance du Secteur Financier, the financial regulatory authority of Luxembourg; and emails to senior officials in the Division of Enforcement providing information about the case and seeking approval for different steps in the investigation.  Id.  Finally, the privileged emails include emails between attorneys handling the investigation and the SEC's Office of the Secretary sending memoranda seeking Commission approval and action, including approval to bring an enforcement action; emails between SEC staff and DOJ staff sharing information and analysis about the parallel investigations; and emails

36, 66, 112, 124, 156, 175, 222, 243, and 244.  The SEC has also agreed to produce in full Document Nos. 229, 231, 233, 234, 236, and 273.  See Vaughn Index [ECF No. 10-4]; Donnelly Decl. ¶ 19.

discussing cases that "Stein-related entities" filed against the SEC and its staff.  Id.

The privileged notes and legal research include handwritten notes and other writings by SEC staff and attorneys recording their thoughts and impressions during meetings or phone calls regarding the investigation, when the attorneys were taking testimony from or interviewing witnesses, and when the attorneys or staff were reviewing documents gathered during the investigation.  Id. ¶¶ 12–13.   The legal research includes the SEC attorneys' research files containing case law and other legal research related to possible claims in the Heart Tronics litigation, gathered in anticipation of the litigation or in connection with the advice, evaluations, opinions and recommendations made by the staff to the Commission.  Id.

Lastly, privilege log documents that fall into this group include documents collected by and created by attorneys involved in the litigation to determine relevant facts and legal theories, and reflect the development of the investigation and subsequent litigation.  Id. ¶ 20.  These include investigative plans, outlines for interviews and testimony, digests of testimony, witness contact lists, exhibit lists, spreadsheets created to summarize and evaluate facts, summaries of factual theories and proposed next steps, data regarding securities trades and other transactions, memoranda analyzing facts and legal issues, emails among the SEC staff discussing legal and factual issues and sharing key documents, and research materials including case law and memos and complaints from other SEC cases.  Id.; see also Vaughn Index.

The second group of documents the SEC withholds under Exemption 7(A) are memoranda, drafts of memoranda, and comments on memoranda from SEC enforcement attorneys to the Commission and to high-ranking officials in the Division of Enforcement regarding whether the Commission should open a formal investigation, notify Stein and others that Enforcement planned to recommend filing a civil action, file a complaint, or settle actions.  Donnelly Decl. ¶ 22.  These

documents contain "detailed analyses of potential violations of the federal securities laws." Id.

With respect to both groups of documents, the SEC claims that disclosure would interfere with the SEC's enforcement actions against Stein and Stein's co-defendant, Willie Gault, as both of these cases are on appeal and the judgments against Stein and Gault are not yet final.  Donnelly Decl. ¶¶ 21, 23; Gov't Supp. Br. [ECF No. 19] at 2–3; see also SEC v. Heart Tronics, Inc. et al., No. 15-55506 (9th Cir.); SEC v. Willie James Gault, No. 16-55780 (9th Cir.).  Release of the SEC's internal deliberations and trial preparation materials could undermine the agency's ability to relitigate the cases against Stein and Gault if they are reversed on appeal.  Testimony outlines, for example, may not reflect exactly what a witness was asked, and could therefore reveal staff theories about what occurred, and digests of testimony and spreadsheets of facts could reveal what facts or statements an attorney thought was important.  Donnelly Decl. ¶ 35.  Contact lists could reveal who the staff thought it needed to talk to at what points in the investigation, and draft documents reveal decisions and changes that were made during the drafting process.  Id.  The memoranda reveal deliberative discussions about the options for the investigation and enforcement action, which the agency may or may not have ultimately pursued.  Id. ¶ 34.  The SEC argues that disclosure would reveal SEC attorneys' and staff's thought processes and deliberations, including evaluations of the case and the development of legal strategies and theories, and would also reveal information protected by the attorney-client privilege and work-product doctrine.  Id. ¶¶ 21, 23. This could reveal the case's strengths and weaknesses, as well as privileged information Stein or Gault would not otherwise be privy to, giving them an undue advantage in the ongoing litigation. Id.

Stein's arguments in response to the SEC's claims are again somewhat confusing.  First, he appears to focus principally on DOJ's criminal case against him, arguing that the SEC has

always maintained that the civil and criminal investigations were separate, and that the SEC has therefore failed to show how release of its materials would interfere with the ongoing criminal case. Stein Mot. for Summ. J. at 12–14; Stein Opp'n at 20–21 ("The cases cited by the SEC . . . are FOIA cases brought against the very agencies that actually prosecuted the FOIA requester in the related proceeding . . . ."). Stein appears to misunderstand the SEC's arguments. The SEC is not arguing that release of the privileged documents would interfere with DOJ's criminal case against him; instead, the agency is crystal clear that release of the documents could interfere with the ongoing civil enforcement actions against Stein and at least one of his co-defendants in the Heart Tronics litigation. Donnelly Decl. ¶¶ 21, 23; Gov't Mot. for Summ. J. at 14–16. Stein's argument about the criminal case is therefore inapposite.

Second, Stein argues that the government's investigation against him concluded "years ago" and that the government already "let the cat out of the bag" about the investigation and its trial strategy when it presented its case in the district court. Stein Mot. for Summ. J. at 11–12; Stein Opp'n at 20. Courts have repeatedly held, however, that the potential for interference remains even when a case is on appeal; an agency may continue to withhold law enforcement records "until all reasonably foreseeable proceedings stemming from [an] investigation are closed." Kay v. FCC, 976 F. Supp. 23, 38 (D.D.C. 1997); see also, e.g., Kidder v. FBI, 517 F. Supp. 2d 17, 28–31 (D.D.C. 2007) (finding that the release of FBI records of an investigation, including witness statements, documentary evidence, and administrative and investigative materials, could reasonably be expected to interfere with a criminal case on appeal); Ehringhaus v. FTC, 525 F. Supp. 21, 23 (D.D.C. 1980) (noting that "courts have held that the purpose of the 1974 amendment to 7(A) was to allow disclosure of closed investigative files, while preventing it for active and prospective files" (citing NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 224–

232 (1978))).  Moreover, if the exemption applies, it "will justify denial of release, not only to the objects of the investigation and any pending or prospective enforcement actions, but to third parties as well."  Kanter v. IRS, 433 F. Supp. 812, 817 (D.D.C. 1977) (citing Nat'l Public Radio v. Bell, 431 F. Supp. 509 (D.D.C. 1977)).  Thus, the SEC may justify withholding documents from Stein on the basis that release of the records would interfere with its case against Gault.

Here, while the release of the government's work product, deliberative material, and staff memoranda would not prematurely reveal that Stein or his co-defendants were under investigation—that particular cat is indeed already out of the bag—the documents that Stein seeks may still cause harm.  Attorney notes, memoranda, and other written products, as well as witness statements and other investigative materials, have been withheld under Exemption 7(A) where they would reveal agency analyses, thoughts, impressions, or what the agency found important in an investigation.  See, e.g., J.P. Stevens & Co., Inc. v. Perry, 710 F.2d 136, 142–43 (4th Cir. 1983) (withholding, among other things, internal memos, interviews, and internal or inter-agency correspondence related to the investigation); Barney v. IRS, 618 F.2d 1268, 1272–73 & nn.9, 13 (8th Cir. 1980) (withholding, among other things, memoranda of interviews with third parties, agent workpapers and notes analyzing evidence and information received during the investigation, internal memoranda analyzing the investigation and the government's case, and correspondence between the IRS and DOJ); New England Med. Ctr. Hosp. v. NLRB, 548 F.2d 377, 383 (1st Cir. 1976) (withholding of witness statements and agency interview notes); Kay, 976 F. Supp. at 36, 38–39 (withholding of complainant/informant exhibits, attorney work product notes, witness statements, and other exhibits); Parker/Hunter, Inc. v. SEC, No. 80-3034, 1981 WL 1675, at *4 (D.D.C. Apr. 29, 1981) (withholding of notes, memoranda and witness interview transcripts); Ehringhaus, 525 F. Supp. at 23 (withholding documents that would reveal "important aspects of

the planned strategy of Commission attorneys, the strengths and weaknesses of the government's case and the amount of resources devoted to the investigation"); Bell, 431 F. Supp. at 514–15 & n.13 (withholding internal DOJ memoranda as to whether a federal crime had occurred).

Because the work product, internal communications, and deliberative documents that Stein seeks essentially provide a road map for the SEC's case in the Heart Tronics litigation, they are likely to give Stein insight into the way the investigation and the SEC's legal strategies developed that he and Gault would not otherwise have, which could make re-litigating the Stein and Gault cases—or possibly even pursuing them on appeal—difficult. See, e.g., Barney, 618 F.2d at 1273 (noting that "[o]ne of the primary purposes of exemption 7 was 'to prevent harm to the Government's case in court by not allowing litigants earlier or greater access to agency investigatory files than they would otherwise have'" (quoting Robbins, 437 U.S. at 224–25) (alteration omitted)); Kay, 976 F. Supp. at 38 ("Interference may be established by demonstrating that release of the records may give the requester earlier and greater access than otherwise possible . . . [i]n this regard, FOIA cannot be used as a discovery tool."); see also, e.g., New England Med. Ctr. Hosp., 548 F.2d at 383 (disclosure of witness statements and interview notes "cannot be said to lack any adverse impact on the Board's ability to prosecute its enforcement proceeding to a successful conclusion"). The Court is therefore satisfied that release of both groups of documents is "reasonably likely" to interfere with the ongoing Heart Tronics litigation.

2. Exemption 5

The SEC also claims that most of the documents on the Vaughn index, and all of the privileged notes, research, and emails, are additionally exempt under Exemption 5, which applies to "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  In order for

Exemption 5 to apply, the documents withheld must be (1) inter-agency or intra-agency; and (2) must fall within a civil discovery privilege.  See, e.g., Shapiro v. U.S. Dep't of Justice, 969 F. Supp. 2d 18, 27 (D.D.C. 2013) (citing U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001)).  This exemption encompasses three different privileges: the attorney work-product doctrine, the deliberative process privilege, and the attorney-client privilege.  See Ellis v. U.S. Dep't of Justice, 110 F. Supp. 3d 99, 108 (D.D.C. 2015).  The SEC focuses here on the attorney work-product doctrine with respect to all of the documents it claims are exempt under Exemption 5, although it also invokes the attorney-client privilege and deliberative process privilege with respect to some of these documents as well.  Because Exemption 7(A) is a temporary exemption that will only prevent disclosure for the duration of the Heart Tronics litigation, the Court will also examine whether the SEC may withhold documents under Exemption 5, which would prevent disclosure even after the Heart Tronics litigation ends.  See, e.g., Shapiro, 969 F. Supp. 2d at 28–29 (noting that work-product is protected after the litigation for which it was prepared has ended) (citing FTC v. Grolier, 462 U.S. 19, 28–29 (1983)).

The work-product doctrine applies to "documents and tangible things prepared in anticipation of litigation or for trial" by an attorney, or in some circumstances by non-lawyers.  See Fed. R. Civ. P. 26(b)(3)(A); Shapiro, 969 F. Supp. 2d at 28 (citing United States v. Nobles, 422 U.S. 225, 238–39 (1975)).  In order for the government to discharge its burden under this doctrine, it must (1) provide a description of the nature and contents of the document; (2) identify the document's author or origin, (3) note the circumstances that surround the document's creation, and (4) provide some indication of the type of litigation for which use of the documents is foreseeable.  See Ellis, 110 F. Supp. 3d at 108 (citing In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998)).

With respect to all of the documents for which the SEC claims this exemption, it is clear that the documents were created for purposes of the Heart Tronics investigation and litigation, or in the case of a few documents listed on the Vaughn index, were memos created for other cases but used for research in the Heart Tronics case.  See Donnelly Decl. ¶¶ 11–13, 19–20, 26–27; see generally, Vaughn Index.  The SEC has thus satisfied the requirement that the documents for which the work-product privilege is sought were "prepared or obtained because of the prospect of litigation."  See In re Sealed Case, 146 F.3d at 884.  The SEC has also explained that all of the documents, including emails and notes, identified on the privilege log and listed individually on the Vaughn index were intended to be confidential and have not been shared with third parties. See Nonaka Decl., ¶¶ 11–16; Donnelly Decl. ¶¶ 3–5.

Based on the descriptions on the Vaughn index, most of the documents listed are classic attorney work product: internal memos and drafts of court filings, legal and factual research and analyses related to potential securities violations, recommendations of possible courses of action, and trial preparation materials, including testimony outlines and digests, all prepared or obtained by SEC attorneys during the course of the Heart Tronics investigation and litigation. The SEC has described the nature and content of these documents and the circumstances surrounding their creation—for example, a "[d]raft action memo for the Commission from Enforcement recommending issuance of a Formal Order authorizing an investigation of potential violations of the federal securities laws and outlining facts developed in the investigation." Vaughn Index at 3, Doc. No. 20.  The document was created by "SEC [e]nforcement attorneys" for the Commission. Id.

Stein objects that the Vaughn index does not sufficiently identify the authors and recipients of the listed documents for the Court to determine that Exemption 5 applies.  To be sure, the index

does not give the names of the individual author, but it identifies, for example, the positions of those drafting or receiving documents, which is more useful than individual names in identifying the contents of a document and the purpose for which it was created.  Such documents are properly withheld as work product under Exemption 5.  See, e.g., Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1202–03 (D.C. Cir. 1991) (withholding documents that contain "mental impressions, conclusions, opinions, or legal theories of an attorney," including handwritten notes containing factual and legal analyses related to the investigation); Ellis, 110 F. Supp. 3d at 108–109 (withholding requests to apply for wiretap authorization, and action and authorization memos); Gov't Accountability Project v. U.S. Dep't of Justice, 852 F. Supp. 2d 14, 26 (D.D.C. 2012) (withholding internal communications about whether to pursue prosecution); Wolfson v. United States, 672 F. Supp. 2d 20, 30 (D.D.C. 2009) (withholding attorney memoranda recommending that DOJ apply for a Title III order); Durrani v. U.S. Dep't of Justice, 607 F. Supp. 2d 77, 84 (D.D.C. 2009) (withholding emails between attorneys and draft indictment and memoranda); Miller v. U.S. Dep't of Justice, 562 F. Supp. 2d 82, 114–15 (D.D.C. 2008) (withholding trial preparation materials).

For a handful of documents described on the Vaughn index, however, the SEC has not provided sufficient information for the Court to determine that the documents are indeed work product.  Documents 5–11 are blue sheet reports[8] showing trading data for Heart Tronics stock, which were apparently "requested by [an] SEC attorney."  See Vaughn Index at 1–2, Doc. Nos. 5–11.  The SEC claims that this is attorney work product, but gives no further explanation on either the Vaughn index or in the submitted declarations as to why that is the case.  Not everything created

---

[8] "Blue sheets" provide trading data and account holder information, and are used by regulatory agencies in enforcement inquiries to monitor and analyze firms' trading activity.  They are known as "blue sheets" for the color of the form.

or requested by an attorney constitutes work product; compilations that merely reflect information already known to an adversary do not.  See, e.g., SEC v. Collins & Aikman Corp., 256 F.R.D. 403, 410–11 (S.D.N.Y. 2009); SEC v. Strauss, No. 09-cv-4150, 2009 WL 3459204, at *10 (S.D.N.Y. Oct. 28, 2009).  The defining feature of work-product is that it reflects the attorney's thought processes, mental impressions, and theories; compilations of data or documents may thus constitute work product "when the act of culling, selecting or ordering" documents or data "reflects the attorney's opinion as to their relative significance in the preparation of the case or the attorney's legal strategy."  See Shapiro, 969 F. Supp. 2d at 32 (citing Sporck v. Peil, 759 F.2d 312, 316–17 (3d Cir. 1985)).  Neither the Vaughn index nor the submitted declarations explain how the blue sheets reflect attorney thought processes or mental impressions, and thus the Court cannot conclude on the information before it that these documents are work-product and therefore protected from disclosure under Exemption 5.

Likewise, the Vaughn index's descriptions are lacking with respect to Document Nos. 66, 201, 209, 265, 266, 268, and 269.  Document No. 66 is merely described as a "[f]orm document transmittal sheet to Iron Mountain."  Vaughn Index at 8.  No other description is provided that would give the Court any insight into what this document is, what kind of information it contains, or for what purpose it was created (although admittedly a form transmittal sheet is unlikely to have much substance).  Document Nos. 201 and 209 are described as "UPS shipping label[s]," again with no further explanation as to how they constitute work product.  Vaughn Index at 20–21. Document Nos. 265, 266, 268, and 269 are press releases and draft press releases, which generally are not privileged because they do not contain confidential information and are intended to be released to third parties.  See, e.g., Robbins & Meyers, Inc. v. J.M. Huber Corp., 274 F.R.D. 63, 84 (W.D.N.Y. 2011) (public service announcements are not protected by attorney client privilege);

Calvin Klein Trademark Trust v. Wachner, 124 F. Supp. 2d 207, 209–10 (S.D.N.Y. 2000) (draft press releases are not protected by work-product).  The SEC has not explained what, if any, information these documents might contain that would qualify them for work product protection.

With respect to the privileged notes, research, and emails, the SEC has likewise failed to provide sufficient information for the Court to determine whether all of these documents may also be withheld under the narrower, more specific standards of Exemption 5 (as opposed to Exemption 7(A)).  It seems clear from the SEC's description of these documents that some of them likely constitute work product, for example, emails among attorneys working on the Heart Tronics investigation and sharing draft memos, documents, and comments regarding the investigation.  Donnelly Decl. ¶ 11.  But the categories of emails and notes withheld is broad and varied, and not every document or category is obviously work product on its face.  Some of the emails, for example, appear more likely to fall under the deliberative process privilege or attorney client privilege, but the SEC has not provided the Court with enough specific detail to determine which documents it seeks to withhold under those privileges, and whether all of the elements of those privileges have been met.  See, e.g., id. (describing "emails to senior officers in the SEC's Division of Enforcement providing information about the case and seeking approval for various steps in the investigation").

Thus, the Court finds that the documents listed on the Vaughn index, with the exception of the specific documents identified above, are attorney work product and may also be withheld under Exemption 5.  With respect to Document Nos. 5–11, 66, 201, 209, 265, 266, 268, and 269, as well as the privileged notes and emails, the SEC has not provided the Court with enough information to determine whether those documents are work product or otherwise exempt from disclosure under Exemption 5.  When the agency submits new affidavits about its search of the RenewData

materials, it should also submit a more detailed description of the above documents and of the categories of withheld emails and notes, specifying which privilege the agency is asserting with respect to each document or category.  The new affidavit should provide the Court with enough information to satisfy the standards of the claimed privileges.

    3.   <u>Exemption 3</u>

The SEC claims that the Suspicious Activity Reports (SARs) listed on the <u>Vaughn</u> index at entry 278 are properly withheld under Exemption 3, which permits the withholding of documents pursuant to other federal statutes that prohibit disclosure.  5 U.S.C. § 552(b)(3).  The SEC argues that the SARs are protected from disclosure under 31 U.S.C. § 5319, a provision of the Bank Secrecy Act which exempts from FOIA disclosure records and reports on monetary instruments transactions, including SARs.  <u>See</u> 31 U.S.C. § 5319; Donnelly Decl. ¶ 24–25.  Courts have therefore held that SARs are appropriately withheld under Exemption 3.  <u>See, e.g.</u>, <u>Cuban v. SEC</u>, 795 F. Supp. 2d 43, 62–63 (D.D.C. 2011); <u>Sciba v. Bd. of Governors of the Fed. Reserve Sys.</u>, Civ. No. 04–1011, 2005 WL 3201206, at *5–6 (D.D.C. Nov. 4, 2005).  The SEC's withholding of the SARs here under Exemption 3 was appropriate.

    4.   <u>Exemption 6 & 7(C)</u>

The SEC withheld a handful of documents listed on the <u>Vaughn</u> index under Exemptions 6 and 7(C), both of which protect personal privacy interests.  Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  This exemption covers records and information on an individual "which can be identified as applying to that individual."  <u>U.S. Dep't of State v. Washington Post Co.</u>, 456 U.S. 595, 602 (1982).  Exemption 7(C) is "somewhat broader," <u>Beck v. U.S. Dep't of Justice</u>, 997 F.2d 1489, 1491 (D.C. Cir. 1993), and covers

information compiled for law enforcement purposes, the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. §552(b)(7)(C). Although the "protection available under these exemptions is not the same," the same balancing standard applies to both.  Beck, 997 F.2d at 1491.  Courts must balance the privacy interests that would be harmed by disclosure against the public's "right to be informed about what their government is up to."  Id. (internal quotation marks omitted) (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 177 (1991)).

Pursuant to these exemptions, the SEC withheld in full Document Nos. 12, 13, 14, 16, and 17.  These documents are spreadsheets listing individuals with knowledge of Stein's conduct, provided by SEC informants, and two emails from informant-investors to an SEC attorney describing how Stein allegedly defrauded them.  See Vaughn Index at 2–3.  The SEC has withheld this information because the disclosure of these documents could reveal the identity of informants who provided information and other potential informants and witnesses who the informant believed had information relevant to the SEC's investigation.  Donnelly Decl. ¶ 37.  Based on the Vaughn index, the SEC also appears to have withheld in full Document No. 222, a witness background questionnaire containing handwritten answers and personal information such as social security numbers, family and residence information, dates of birth, etc.  See Vaughn Index at 22. This document was redacted in full to protect the witness's identity.  Id.  A blank copy of this questionnaire was apparently released in full to Stein.  Id. at 28; Donnelly Decl. ¶ 19.

The SEC also withheld in part Document Nos. 34, 36, 112, 124, 156, 175, 243, and 244. Document Nos. 34, 36, and 112 redacted the names of attorneys working on the investigation, Vaughn Index at 5, 12; Document Nos. 124, 156, and 175 redacted the names of witnesses who provided investigative testimony, id. at 13, 16, 18; and Document Nos. 243 and 244 redacted

personal information like social security and bank account numbers, id. at 24–25.

Because these records are contained in the SEC's investigative files, the Court will address the withholding of these records under Exemption 7(C). "It is settled that the privacy interests of third parties mentioned in law enforcement files are 'substantial,' while '[t]he public interest in [their] disclosure is not just less substantial, it is insubstantial.'" Sonds v. Huff, 391 F. Supp. 2d 152, 158 (D.D.C. 2005) (quoting Safecard Servs., 926 F.2d at 1205). Moreover, "Exemption 7(C) 'affords broad privacy rights to suspects, witnesses, and investigators.'" Safecard Servs., 926 F.2d at 1205 (quoting Bast v. U.S. Dep't of Justice, 665 F.2d 1251, 1254 (D.C. Cir. 1981) (alteration omitted)). In particular, disclosure of names, addresses, and other personal identifying information is required only if the public interest outweighs the private interest. Id. at 1206.

Here, Stein does not directly address Exemptions 6 or 7(C), but he does argue generally that the public interest favors broad disclosure of the information he has requested because the government has an interest in knowing "how government agencies investigate and chose [sic] to indict and prosecute alleged offenders on [sic] taxpayer's expense, all while not searching for the truth." Stein Opp'n at 12. While the public certainly has a general interest in "matters of substantive law enforcement policy," CREW, 746 F.3d at 1095 n.5 (internal quotation marks omitted), this sort of general public interest rationale has been consistently rejected with respect to the kind of personal identifying information the government has withheld here. See, e.g., Safecard Servs., 926 F.2d at 1205 (rejecting the argument that "access to the names and addresses . . . would provide SafeCard and the public with insight into the SEC's conduct with respect to SafeCard in particular and short selling practices in general"). Personal information like witness or investigator names, addresses, and social security numbers is rarely probative of agency conduct or performance. Id.

Nevertheless, Stein alleges that government misconduct took place in both the civil and criminal cases against him, which he argues creates an overriding interest in disclosure. Stein Opp'n at 10–13. But in order to override the privacy interests at stake, Stein must produce "compelling evidence that the agency denying the FOIA request is engaged in illegal activity and . . . that the information sought is necessary in order to confirm or refute that evidence." Quinon v. FBI, 86 F.3d 1222, 1231 (D.C. Cir. 1996). Stein has not done so. As "evidence" of government misconduct, he quotes out of context a statement made by an SEC attorney during the Heart Tronics summary judgment hearing, in which the attorney explained that the SEC had not ultimately done much discovery on the truth or falsity of the purchase orders discussed in the complaint because the SEC was planning to rely on the collateral estoppel effect of Stein's criminal conviction. Compare Stein Opp'n at 11–12, with Ex. A, Stein Decl. [ECF No. 14-1] at 15:14–16:4 (transcript of summary judgment hearing in SEC v. Heart Tronics et al.). Stein also points to "Exhibit X" as evidence that the government is lying about the existence of Yossi Keret, an argument that the Court has already rejected. Stein Opp'n at 12. Finally, Stein makes vague allegations about Brady violations in his criminal case, which he has not substantiated here, and which the Eleventh Circuit has already rejected in any event. See Stein, 846 F.3d at 1145–47. None of this is evidence of government misconduct. Moreover, "[a] requester's 'personal stake in using the requested records to attack his convictions' is not enough to meet the public interest test." Sonds, 391 F. Supp. 2d at 159 (quoting Oguaju v. United States, 288 F.3d 448, 450 (D.C. Cir. 2002), vacated and remanded on other grounds, 541 U.S. 970 (2004)); see also, e.g., Nishnic v. U.S. Dep't of Justice, 671 F. Supp. 776, 791 (D.D.C. 1987) (interest in Brady material is a "decidedly private interest").

In short, Stein has failed to explain what public interest exists in the names, addresses,

social security numbers, and other personal information of the informants and investigators whose information the government withheld under Exemption 7(C).  The private interests in this information, on the other hand, are obvious.  The government's withholding and partial withholding of documents under Exemption 7(C) is appropriate.

### D.  SEGREGABILITY

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Where a plaintiff does not challenge the agency's segregability efforts, courts are required to consider this issue sua sponte.  Trans-Pacific Policing Agreement v. U.S. Customs Serv., 177 F.3d 1022, 1028 (D.C. Cir. 1999).  The agency must provide a "detailed justification" for the non-segregability of any documents.  See Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).  That being said, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which a requester must rebut by some "quantum of evidence."  Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007).  Generally, it appears that agencies may satisfy their segregability obligations if they provide a sufficiently detailed Vaughn index that describes the documents withheld and why, and if the agency also submits a declaration attesting that all segregable information has been released.  See, e.g., Loving v. U.S. Dep't of Defense, 550 F.3d 32, 41 (D.C. Cir. 2008); Johnson v. Executive Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002).

With respect to the documents withheld under Exemption 7(A) (which is the same group of documents withheld under Exemption 5), certain of the privileged emails contained attachments or forwarded documents that the agency did not consider to be work product standing alone, but

the emails were withheld because they identified what documents or facts SEC attorneys considered significant.  Donnelly Decl. ¶ 28.  The non-privileged attachments were produced separately to Stein during the <u>Heart Tronics</u> litigation.  <u>Id.</u>  The SEC states that none of the withheld documents, emails, or notes are otherwise segregable.  <u>Id.</u> ¶ 29.

Stein argues generally that the SEC has failed to show that the documents withheld are not segregable because the agency did not describe document by document on the <u>Vaughn</u> index why certain information could not be segregated.  Stein Mot. at 18.  Contrary to Stein's arguments, an agency withholding documents under Exemption 7(A) does not need to justify its segregability determination document by document, as the exemption allows agencies to justify withholding based on <u>categories</u> of documents.  <u>See</u> <u>Robbins, Geller, Rudman & Dowd, LLP v. SEC</u>, No. 3:14-cv-2197, 2016 WL 950995, at *8–10 (M.D. Tenn. Mar. 12, 2016); <u>Kidder</u>, 517 F. Supp. 2d at 32 (citing <u>Parker/Hunter</u>, 1981 WL 1675 at *4).  Here, the SEC has sufficiently described two categories of documents that it has withheld under Exemption 7(A) in their entirety, and explained that it is not possible to segregate non-exempt information from these documents, except as the Court has described above.  This is sufficient to satisfy the agency's segregability obligations with respect to the documents withheld under Exemption 7(A).  <u>See, e.g.</u>, <u>Dillon</u>, 102 F. Supp. 3d at 298 (finding that the agency satisfied its segregability obligations where the agency explained that certain records were exempt in their entirety under 7(A)).

In addition, the SEC need not demonstrate segregability with respect to those documents that were also withheld as attorney work product under Exemption 5, because where "a document is fully protected as work product, then segregability is not required." <u>Judicial Watch, Inc. v. U.S. Dep't of Justice</u>, 432 F.3d 366, 371 (D.C. Cir. 2005).  Likewise, the SEC need make no segregability determination with respect to the SARs withheld under Exemption 3, because

disclosure of those documents in their entirety is prohibited by the Bank Secrecy Act.  See Morley v. CIA, 508 F.3d 1108, 1126 (D.C. Cir. 2007) ("Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." (internal quotation marks omitted) (quoting Ass'n of Retired R.R. Workers v. U.S. Rail Road Ret. Bd., 830 F.2d 331, 336 (D.C. Cir. 1987))).

Regarding the documents withheld under Exemption 7(C) to protect personal privacy, the SEC has explained why certain documents must be withheld in their entirety, because disclosure would reveal the identity of various informants.  See Vaughn Index at 2–3, Doc. Nos. 12–14, 16–17.  The SEC stated that it would provide Stein the unredacted portions of those documents only partially withheld under Exemption 7(C)—i.e., Document Nos. 34, 36, 112, 124, 156, 175, 222, 243, and 244—but has not yet confirmed that it has done so.  See Gov't Mot. for Summ. J. at 27.  When the SEC submits its briefs, affidavits, and declarations with respect to the RenewData materials and Stein's second category of requests, it should also confirm that it has produced the unredacted portions of these documents to Stein.

Finally, the SEC has confirmed that it has produced in full Document Nos. 229, 231, 233, 234, 236, and 273.  Donnelly Decl. ¶ 19; Vaughn Index at 23–24, 28; Gov't Supp. Br. at 1, 3.  While Stein argued in his opening brief that the SEC "failed to produce any documents in this FOIA litigation," Stein Mot. for Summ. J. at 15, he does not appear to contest in any subsequent brief that the SEC has now produced in full these six documents.  Accordingly, the Court finds that the SEC has satisfied its segregability obligations with respect to the documents withheld under Exemption 7(A) and Exemption 3, but has not satisfied its obligations with respect to the partially redacted documents withheld under Exemption 7(C), until it confirms that it has provided

the unredacted portions of these documents to Stein.

## **CONCLUSION**

For the foregoing reasons, the Court finds that the government properly withheld documents responsive to Stein's first category of requests under FOIA Exemptions 3, 7(A), and 7(C), but did not conduct an adequate search for documents responsive to Stein's second category of requests.  Some of the documents withheld under Exemption 7(A) were also properly withheld under Exemption 5, but the Court lacks sufficient information to determine whether the privileged notes and emails, as well as several documents listed on the Vaughn index, were properly withheld under Exemption 5 as well.  The Court also finds that the government has satisfied its segregability obligations with respect to all withheld documents except the specific documents identified above withheld under Exemption 7(C).  The Court therefore grants in part and denies in part the government's motion for summary judgment, and denies Stein's motion for summary judgment. A separate order has been issued on this date.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated:  July 24, 2017